We'll hear argument first this morning in Case 09-1036, Henderson v. Shinseki. Ms. Blatt. Thank you, Mr. Chief Justice, and may it please the Court. The Federal Circuit's decision in this case forecloses judicial review when the very disability for which a veteran seeks benefits prevents the veteran from filing a timely appeal with the Veterans Court. That decision is wrong, and for three reasons the Court of Appeals erred in holding that the deadline at issue in this case is jurisdictional. First, the statute contains no clear indication that the deadline is jurisdictional. Rather, the text and structure point away from a jurisdictional reading. Second, a deadline that applies to disabled and largely uncounseled veterans seeking their first day in court is not the type of deadline that Congress would be expected to rank as jurisdictional. And third, a jurisdictional reading would render some of the most disabled of veterans the least likely to obtain benefits and would treat veterans worse off than almost all litigants in our Federal system. Ms. Blatt, you do have a substantial hurdle to contend with in this Court's decision in Bowles v. Russell, which seemed to say if you have a time limit and it's statutory, it is mandatory and jurisdictional. So here we have a time limit set by statute, not by rule. And why doesn't why isn't that dispositive? Because neither this Court's decision in Bowles nor any other decision by this Court holds that this type of appeal, from a proclaimant and non-adversarial proceeding to a court of first review, clearly speaks in jurisdictional terms, notwithstanding the lack of a jurisdictional label. Scalia, I thought Bowles was a nice, clear case. I mean, you can always find some distinction in the next case. And I thought the object of Bowles was to say if it's a limit on appeal, it's jurisdictional. And that's, I gather, what the Federal Circuit took it to mean. And I would have done that if I was down there, probably. I mean, I can understand why maybe the Federal Circuit did it, because of the one statement that the Court, I think, took out of context. But this Court's decision in Bowles didn't purport to extend to any statute, no matter what the statute said or what the context it arose in. And the most closely analogous context of an appeal of agency action to a court of first review is the Social Security context. And even if you don't think that that context is directly on point, then the historical backdrop at most would be inconclusive. And that hardly would rise to the question. Scalia, doesn't the Social Security context, it doesn't speak of an appeal, does it? It talks of a civil action. That's right. You're right that, you know, there is a parallel in what's going on, but the statute does not call it an appeal. It calls it bringing a civil action to challenge the decision. Right. And there's nothing inherently jurisdictional about the word appeal. And, Justice Scalia, if Congress that passed this statute wanted to pick up on the jurisdictional rule under 28 U.S.C. 2107, presumably it would have written a statute that looks something like that statute with the safety valves. Of course, when all litigants, civil litigants who are appealing a district court judgment to a court of appeals, they have a jurisdictional deadline, but the district court can extend it for good cause or excusable neglect, or when the party lacks notice of an adverse judgment. More importantly, the Federal rules of appellate procedure cure the situation when a litigant timely files his appeal, but does so in the wrong form. In this statute, Congress knew how to incorporate the jurisdictional rule of Bowles. It did so in a separate provision of the statute in 7292a. It said when a litigant wants to go from the Veterans Court and appeal that decision to the Federal circuit, the litigant has to follow the time and the manner prescribed for appealing district court judgments to court of appeals. Sotomayor, and that is jurisdictional, 7292. Yes. Yes. And interestingly, it also goes on to say if you want to appeal to this court, you have to apply for certiorari. So Congress can't do that. Sotomayor, I'm not sure why Congress would have actually known the difference that we established in Bowles, because when it passed this statute, it was before Bowles, wasn't it? Yes. So what to read of its knowledge of Bowles, whether it meant jurisdictional or not, is a bit of a fiction, isn't it? No. I think what's important is that Bowles is relying on a series of decisions that had nothing to do with the word notice of appeals, of course, because they were dealing with cases involving writs of error and petitions for a writ of certiorari. It was all in the context of court-to-court appeals. Bowles doesn't even mention agency, appeal of agency action to a court of first review. Sotomayor, so what's the rule? Justice Scalia said Bowles seemed to establish a sensible, clear rule, which is if Congress uses the word notice of appeal, it intends a jurisdictional restriction. That appears to be the rule that Justice Scalia articulated. What would be your rule or test now to determine Congress's purpose? What of our cases would you point to that establish a different rule? The rule of Reed-Elsever, which was a unanimous decision, which says, and it was written by the same author of Bowles, that all the decisions are consistent. You require a clear statement of jurisdictional intent. And in Bowles, this Court had read the type of limitation that was at issue in Bowles as to clearly speak in jurisdictional terms, notwithstanding a label. Here, you have a sense that you have a distinction. Sotomayor, I'm not sure what that distinction is. I'm sorry. You had a sense that you have a distinction. I'm not sure what the distinction is. I'm not sure what the distinction is between the word notice of appeal and the term of appeal in Bowles within a historical context. I don't think this Court said the word notice. A notice of appeal is not jurisdictional in the criminal context. And Congress used the word appeal throughout this particular statute in a non-jurisdictional meaning in all the proceedings that go in the agency. It used the term appellant and review on appeal. It's actually called the Board of Veterans' Appeal, substantive appeal. None of those words have jurisdictional. And if Congress was just thinking of the word notice of appeal, it means the term has a non-jurisdictional meaning in the criminal context. But if you just look at this statute, which says it's directed just at the litigant's obligation to file his appeal within a certain timeline, and there's actually a completely separate statute that speaks to the power of the court, the Veterans' Appeals Court, 7252a, and that makes no reference to the 120-day deadline. And I think in terms of the context, this is exactly the type of deadline that Congress would be expected to be subject to equitable tolling. Let's give you the three reasons. Alito, you would have us make a statute-by-statute determination as to what we think Congress intended whenever it uses the term notice of appeal. And perhaps that's not a big problem if there are not a lot of other statutes like this one that use the term notice of appeal and with respect to which it's not settled whether it is jurisdictional. Do you have any sense of how many others there might be? Yeah. I think I found four that used the term notice of appeal, and it was in connection with the district court, and there weren't even reported cases. They were very esoteric situations like an order from the Department of Agriculture. I mean, maybe the government has different. What you mostly see is the Hobbs Act context, where you're talking about either an organic statute or 28 U.S.C. 2344, which is just a simple petition for review. That doesn't even use the word notice of appeal. So this case is not going to dictate a whole lot except for the veterans context, where not only do you have the standard lack of indication that this is not jurisdictional, but you have the unique features in that Congress established this court to open the door to veterans seeking disability benefits, and it would just conflict with that purpose to at the same time shut the door when the veteran's disability prevents him from getting to the courthouse. Although that would happen when he appeals from the Veterans' Appeals Court, right? Yes. But that points out the irony. He's in better off shape if he appeals to the court of appeals, because there, there's at least important exceptions. The government's position assumes that no matter what the circumstances were, and remember, a lot of these cases the veteran is actually timely filing his appeal. He mistakenly files in the Veterans Administration rather than the Veterans Court. And the government's position assumes that these uncounseled veterans are simply out of time and out of luck, with no exception. How much time does 7292 give to go from the Veterans Court to the Federal Circuit? It says you have to follow the exact time and procedure that is set forth in the process for appealing a United States district court decision to United States courts of appeals. So it is the procedures under 28 U.S.C. 2107. Scalia, but this one to get to the Veterans Court is 120 days, which is a lot of time. Do you know of any other time limit that is that long? Sure. I mean, the statute of limitations in Zipes, which is 180 days to file a charge with the EEOC. But in the veterans' context, Justice Scalia. For appeal, for appeal. Right. Do you know of any other appeal statute? Yes. The veterans' context. This is a blink of an eye in the veterans' context. The veteran is given an entire year, not 120 days, a year after an initial decision comes down from a regional office to decide whether to appeal to the boards of veterans' appeals. And you have to keep in mind that this is the type of extra time we're talking about. An extra 30 to 60 days would be an extremely poor and unlikely means for Congress to address the type of situation where equitable tolling might be needed, which is either because the Secretary has held on to the notice of appeal until after the 120 days and then tells the veteran, or the veteran has some devastating mental illness and has difficulty with processing deadlines and dealing with concepts. Well, the latter I can understand, but I don't have a whole lot of sympathy for the veteran. I mean, when he loses below, he gets a notice that says specifically he has to file an appeal with this Court, doesn't it? Doesn't it say that? Yes, and it says that. Scalia So he sends it to the VA instead of to this Court? Well, it is a you can look it up. Would equitable tolling even cover that situation, it would seem to me? I'd say it told you where to file. You simply didn't cover the description. Not only has the Federal Circuit ruled en banc that it does, but this Court's decision in Irwin and in United States v. Young specifically recognized that a classic equitable tolling situation is when there's no prejudice to the other side and the other person is in the wrong form. And you have to keep in mind there's a Federal rule of appellate procedure on point. Rule 4D says when a litigant mistakenly files his notice of appeal in the court of appeals, that's presumed to be correctly filed in the district court. And whatever you think about what your what an average type person might see when they see a two-page, single-spaced form with a lot of legalese, it's this form is difficult for a lawyer to read and to expect the vast majority of the claimants reading this form are uncounseled. And I urge you to read the form. It doesn't just say you have 120 days to appeal. It goes on and on and on, telling you it's cited in the government's brief. It's got the VA form, and I had to look it up just by punching it on the Internet. But whatever you think about the clarity of someone of your stature that might be able to understand it, time and time again, veterans file in the wrong form. And it's not always just the veteran's fault. Sometimes the Secretary is giving the veteran misleading advice. We cite cases in our brief, and so did the amici, where the Veterans Administration is giving the veteran just misleading advice. Ginsburg. Ginsburg. You were making, you said the closest comparison is in the social security, let's say disability benefits in both cases. Apart from that one is commenced by a complaint filed in the district court, the other is a notice of appeal. Is there any difference in the brand of review? That is, as I understand it, social security review, although it's by the district court, is also on the administrative record. Well, it's purely appellate, and district courts always say when they get these things, this is an appeal of a social security decision. But I think the three reasons that I'm trying to get on why this is precisely the type of deadline that Congress would not rank as jurisdictional and would want to be subject to equitable tolling are pretty much the reasons that apply even more so in the veteran's context. And that is the first, is that this is an extremely favored class of litigants. These are veterans who have fought for their country and who are seeking service-connected disability benefits. This is also the veteran's first opportunity to get to a court, which is true in the social security system. And importantly, the vast majority of veterans go to the court without counsel. The numbers are over 50 to 70 percent, and that was true in the social security system. I don't think that the other way is that it's not a real adversarial system before you get to that stage. It's a collaborative effort, the Veterans Administration and the individual. Which seems to me may counterbalance a little bit the fact that the veterans are uncounseled. Well, I mean, up until 2006, they were actually barred from having lawyers. But this is the same thing as the social security context, which is what this Court relied on unanimously in Bowen in holding that it's not jurisdictional. And it's also what this Court relied on in Zipes, is that you wouldn't expect Congress to enact an inflexible, harsh, no exceptions whatsoever jurisdictional deal when Congress presumably knew that the vast majority of people who would be navigating this system, coming out of this extremely informal adversarial system where the Secretary had a duty to actually assist the veteran, and then hitting what is then an adversarial system, and you would think that you would want equitable tolling. The other thing is that the Veterans Administration, in the case of Zipes, is not unassisted. I mean, isn't there usually assistance from a nongovernmental organization such as the American Legion or? Yes, in the Veterans Administration, not in Veterans Court. That's right. So 50 to 70 percent. Do they drop them like a hot potato once the VA portion is over? They don't counsel about how to file an appeal? That's correct. But I wouldn't say they drop them like a hot potato. These are people who are sitting in the VA, and they remember, like in this case, it's three years later, they don't even get notice of the final decision, which is just sent to the veteran. They don't have any kind of lawyer relationship. It's like someone at one of the VA offices who says, let me help you, tell you what to do, and then that's it. So, no, they don't practice in Veterans Court. They don't say, you know, here's my card, let's keep in touch. And it might be 3 to 4 years later that a notice is sent to the veteran. And you think normally he isn't assisted, he is not assisted by one of these people? Well, I know that. The Veterans Court statistics says it's 70 percent. Pro se, no lawyer. And the actual amicus. Scalia, I'm not talking about a lawyer. I'm talking about advice from somebody in the American Legion. Even if, okay, they are still not lawyers, but the veterans-assisted organizations who filed in this case are telling you they don't participate in Veterans Court. That's not what they do. They are set up in the VA system. So, it's. Unless I'm missing the point of my colleague's question, it's two different issues. Of course, they don't participate in court. They are not lawyers. But it's not clear to me why they wouldn't participate, at least in the process of saying you've got to file your notice and here's where you file it. Are you saying they don't do that? They by and large don't do that. And the veterans organizations that filed amicus briefs say they also make the same mistake. They are not lawyers and they often file in the wrong form, too. But again, what's. I mean, they do it regularly and every now and then they file it in the wrong place? Yes. I mean, half the cases that we, you know. Why don't you see how that works? You've got somebody there and he's been telling them where to file it and file it and file it, and all of a sudden he tells them to file it someplace else? Again, as far as I am aware, they don't counsel veterans after they get notice. Earlier, Ms. Blatt, you said that they wouldn't even know. They wouldn't, right. Because they don't get notice, only the veterans. Right. They wouldn't get notice. It would be someone would have to have some sort of relationship and call that person. But in this case, I mean, I can tell you there was no the veteran just had his wife and there was no one else involved in the process other than his doctors. But in terms of. What happens if the veteran doesn't get notice? Well, he's out of luck, according to the government. That's just tough. But again, thinking about and remember that not only is there a clear statement rule in the types of jurisdiction, but we have a equally strong canon that veteran statutes are to be construed liberally in the. What clear statement rule are you talking about? Just the rule of Reed, Elsevier and Arbaugh, that unless a statute clearly speaks in jurisdictional terms. Yeah, I remember that. I remember that. I thought that that was a prospective bright-line rule. It's kind of hard to apply a new bright-line rule retrospectively. I understood what we said in those cases to be, look, Congress, we're tired of trying to sort out this ambiguity. From now on, if you want it to be treated as jurisdictional, tell us it's jurisdictional. That makes sense prospectively, but it doesn't make sense to do that to statutes that were passed before we announced our bright-line preference. Well, it doesn't make sense to say in 1988 Congress was trying to map on to some preexisting structure that didn't exist. Bowles didn't exist. You make it. No, I'm sorry, I understand changing the subject, but in my question, you invoke the bright-line rule of Arbaugh that the statute should say jurisdictional, and I'm just saying that only makes sense prospectively. I can see your point. I don't think that that's what Arbaugh intended. I think it said that when you have a statutory requirement and when it doesn't speak to the jurisdiction of the court, there's no reason to think that it should restrict the jurisdiction of the court. This doesn't say anything about the court's power. Ginsburg. We have in Bowles itself, it was from the district court to the court of appeals, and then we have from the court of appeals to this court, those two provisions were cited in Bowles, the 2107, and what is the provision for cert? 2101. 2101. Those, as far as I remember, were the only provisions that were cited. And the predecessor is called writ of error. Right. I mean, this couldn't be further from it. Congress, when it passed this statute, said you have 120 days to file your appeal. And then in a whole end said, didn't say anything about the jurisdiction, and a separate provision said here's the jurisdiction and we'll incorporate some procedural requirements, but we're not even going to mention the 120-day deadline. And then it goes to great pains to say 2107 will apply when you appeal from the Veterans Court to the Federal Circuit, and you'll have to apply for certiorari. But to think about what the government's position is, is that notwithstanding that criminal defendants and Social Security claimants do not face jurisdictional deadlines, all the civil litigants in our system who do face jurisdictional deadlines can get an extension for good cause, excusable neglect when they don't have notice of an adverse judgment, and the situation is cured when they actually are timely filed, but they mistakenly file in the wrong department. Scalia, whenever we have time limits in the future that do not contain any explicit provision for waiver of failure to meet those time limits, you're asking us to find that all of those are non-jurisdictional? Well, all statute of limitations are not jurisdictional. So there's no question. So this is a filing requirement. It's an appeal. It's a requirement for appeal. Whenever there is an appeal deadline that does not have an exception for, you know, you can get it extended for 10 days or whatnot, whenever there's no exception, you want us to hold it's not jurisdictional? No, of course not. Like I just said, I don't know of any that even come up except for, I think I found four, that say notice of appeal. All the types of cases that you see are dealing with a petition for review of agency action, a la the Hobbs Act context. So what I'm asking you to hold is that when you have a this particular statute, which the text and structure certainly say it's not jurisdictional, it is exactly the type of the deadline you would expect it, and it would undermine all of the purposes that Congress set up this Court, which was to ensure they have their day in court, they get the benefits they are entitled to, and importantly, to cure the perception that veterans were not being treated the way all other claimants seeking Federal benefits were. This would completely counter that purpose to say, here's a court, we've built it for you, but if you can't get up the courthouse steps, that's too bad. If your very disability prevents you from filing or you've been abused by the VA bureaucracy, you're out of luck and out of court. Scalia, although you're willing to allow that to happen when there's an appeal from the first appeal, right? And here's why, Justice Scalia. The veteran has had a day in court. Once he is out of the veteran's court, he is like every or she is like every other litigant in our Federal system, which the deadline applies to the government, the deadline applies to the party, to any party. That's 2107, which applies to all civil litigants equally. They've had their day in court, and if it's in the Hobbs Act context, usually they've had some sort of adversarial court-like proceeding in the administrative agency. But no decision, and again, keep in mind there were three decisions in the Social Security context, no decision has ever said proclaimant, non-adversary appeal to a court of first review is jurisdictional. So Congress was acting against that backdrop. And there's no such thing. Ginsburg, and that was the Federal Circuit's position until Bowles, right? This was an en banc decision, and it overruled two prior cases. Right. They did go back and forth. So there was a period of 6 years that they held it was jurisdictional, and then a period of 11 years, the last 11 years where it's been non-jurisdictional and there's been equitable tolling. If a veteran is so profoundly disabled that the veteran can't file the notice of appeal within 120 days after the notice of the decision, at what point after the last 120-day period would the right to file a notice of appeal be cut off? Would this go on potentially indefinitely? No. I mean, in adopting equitable tolling by the Federal Circuit for mental disabilities, that case is Barrett v. Principi on page 9 of our brief, it goes through how all the sister circuits have dealt with the issue of mental disability in Title VII, in the Social Security system, and how you would deal with that. But let's take this case, because it's a good example. The doctor said he was he's paranoid schizophrenic, so he's having periods. And what the doctor that was submitted to the Veterans Court, he had episodes of what was basically called psychomotor retardation and total inability to function. And other times he was just simply disorganized, had difficulty with recall and memory. So he wrote a handwritten note within 15 days saying, I've been on and off, and he was obviously extremely heavily medicated, if I could reserve the balance of my time. Thank you, counsel. Mr. Miller. Mr. Chief Justice, and may it please the Court. In Bowles v. Russell, this Court reaffirmed its longstanding treatment of statutory time limits for the taking of appeals as jurisdictional. Section 7266a imposes a 120-day time limit on the taking of an appeal to the Veterans Court, and under the rule reaffirmed in Bowles, that time limit is a limit on the Court's jurisdiction. The judgment of the court of appeals should therefore be affirmed. Of course, in Bowles, it was from an Article III court to another Article III court. Here, although we're dealing with an Article I court, there are characteristics of what you might call internal agency review. The court is specialized with respect to Veterans Affairs, and there are particular standards for review that you don't find when you're talking about between the district court and the court of appeals. And I guess it's related, just to get everything out on the table, it's related to the same point that I thought it was significant in Bowles that you're dealing with a time limitation that lawyers had long recognized as being, you know, a drop-dead date. That is true, but what Bowles emphasized was not just the historical treatment of the particular time limit in Section 2107, but the historical treatment of statutory time limits for appeals in general, which is why the Court cited not only 2107. Ginsburg. Bowles didn't mention anything like an appeal from an agency where the district court is sitting essentially as an appellate court. And Bowles really was dealing with court-to-court, because it mentioned 2107 and 2101, and I don't recall that it mentioned anything other than court-to-court situations. You're correct that Bowles was focused on court-to-court appeals, but of course in Stone v. INS, which involved the deadline for petitioning for review of the final decision of the Board of Immigration Appeals, the Court held that that time limit was jurisdictional. So I think that the same principle applies to appeals from agencies. Ginsburg. Except that one is an adversarial proceeding, the immigration proceeding, and the veterans are supposed to be claimant-friendly. But I think that the Justice Bowles is a challenge for Ms. Blatt, so for you, it's It is true that functionally the review that takes place under section 405G has a lot of appeal-like features, but what's – and so in that sense, Bowen was, I think,  because you have something that looks a little bit like an appeal, but it takes place in a district court, in a court of original jurisdiction, and most importantly, Congress referred to it as a civil action that is commenced by the parties filing a complaint. Ginsburg. But it is an appellate review, isn't it? I mean, the district court goes on the record before the agency. The review is very much like, functionally, like what would happen in the court of appeals, but Congress chose to call it commencing a civil action, and you commence it by filing a complaint, which is quite different from the notice of appeal here. The notice of appeal is that there's a form for doing it, or if you don't use the form, all it takes is one sentence. Breyer. Breyer. Are we supposed to still pay some attention to what we think Congress would have intended? Certainly. All right. The answer is certainly. How likely do you think it is that Congress would have intended its statutes? In an ordinary case, where two big businesses are suing each other, and they've already had a day in court, and now one of them wants to appeal, and Congress writes in, if you miss the deadline, you can have it extended through excusable neglect, and you can even have it extended much later if nobody got a notice. That's with two big businesses. But if you have someone who served his country and was wounded and has post-traumatic stress syndrome or schizophrenia, to that person, you say, who has never had a day in court, if you don't meet the deadline, you're out, no matter how excusable it is. How — who in Congress would have likely thought such a thing? Well, I think in evaluating what Congress thought in 1988, one factor that's significant is that this was taking place, the Veterans Judicial Review Act, against a backdrop of decades of no judicial review whatsoever of veterans' VA administrative decisions. And so Petitioner's position is that essentially Congress in one fell swoop went from no review whatsoever to what would be the most forgiving appeal deadline in the entire United States Code. And it made some sense when you look at the statistics, when you get into this court, the veterans almost always win, right? I think when you look at decisions on the merits, as opposed to agreed-upon remands, the veterans win in most cases. I don't think that's the case. Breyer, what is the relevance of that, if the veterans win? I mean, perhaps they're entitled to win. Is the idea that you would cut off their right to appeal because you're afraid they'd win? Of course not. I mean, I have a sense. My point was the exact opposite, that if you — if they almost always win, you assume  that if 1 percent of the veterans appealing win, you might understand an absolute rule, because they're not, as statistically anyway, not losing much. But if, as I understand to be the case, about 80 percent of them win, you might cut them a little slack on appealing because it is a very significant part of the process. I'm sorry. First, I would say I think the reversal rate is not necessarily out of line with what you find in other agency review contexts, but what is the reversal rate? I think of cases that are decided on the merits, about a quarter are reversed and remanded, and about 34 percent are affirmed in part and reversed in part. Any idea what the normal rule is from district court to court of appeals? I don't know the percentage there. But I think in considering that rate, it's significant that the great majority of claimants who file claims in the regional office are given relief there. And so only about 4 percent of cases are even appealed all the way from the regional office to the board, and only another 9 percent to the veterans court. So, because the board gives relief in most cases before it. So it's not as. Scalia, Mr. Miller, do you really think Congress thought about this? Do you think the members of Congress who voted this bill thought about this rather narrow point about whether if you file too late, it's jurisdictional? Miller, there's no indication that they did. Scalia, So don't we pretty much have to go on what they wrote? Miller, yes. And when they wrote a notice of appeal provision, and it is clear from the text, as well as from the history, that it is, in fact, an appeal, that was a considered decision. Scalia, Well, put a dollar to a donut that nobody thought about this narrow, narrow issue. So it ought to be a question of what this language ought to be taken to mean. What's its fairest reading? Now, I'm not sure that means you win, but surely that's the issue, not what, you know, whether Congress could have been so mean. They didn't think of this. Breyer, and in looking at what you mean, right, I thought within, first of all, a donut costs a dollar, so I don't see much deal there. But don't we, throughout the statute books, try to work out from context, language, and objective purpose? What? What a reasonable member of Congress would have intended, whether they thought about it or whether they did think about it, which would require X-rays into the brain that have not yet been invented. What this Court has held in Bowles on the one hand and Irwin on the other is that statutory notice of appeal deadlines are presumptively jurisdictional and statute's limitation are presumptively not. Sotomayor, but that's court to court. Do you have any case at the time or before the statute was passed that the statute had ever held that a statutory deadline from an agency to a court appeal was jurisdictional in the sense of Bowles? Stone v. INS, which was after 1990. Well after. But in the courts of appeals, there was a long history of cases under the Hobbs Act, cases under more specialized statutes, the Communications Act, the Federal Power Act, environmental statutes. But those had different language. They used barred language rather than filing language, most of those. No. In fact, the Hobbs Act says a party aggrieved by the order may seek review by filing a petition for review. It doesn't say anything about, and a claim shall be barred if you don't. But Bowles itself made a major point which I thought was relevant, but I didn't join it. I thought it was relevant, and that is we look at the statute, if you're looking at the statute, and notice that there are exceptions written into it, and the fact that there are exceptions written into it lends some support to the notion that we as a court should not read other exceptions into it that weren't mentioned. That's something the Court seemed to emphasize. And here, when I looked at this statute, I noticed there are no exceptions written into it. And therefore, following Bowles rather than rejecting Bowles, it would seem that Bowles would support the reading of this statute to allow courts to read into it because they don't mention anything themselves. I would say two things about that. The first is that there are many statutes, including the Hobbs Act, the immigration statute, that have no provision for exceptions. This Court's certiorari deadline can be extended by a justice, but there's no provision for a good cause exception. The extension provision that was specifically at issue in Section 2107 in Bowles wasn't even enacted until 1991, and even with an extension, I'm not aware of any other provision that gives you as much as 120 days that you have here. Breyer, that's the main thing. Leaving that out for a second, if you thought there can't be a rule that governs all of the thousands of different or many different statutes, you should look at the context. So sometimes you will see that Congress, given the context, probably did want to give the Court some leeway to make exceptions, where, for example, it's no fault of the litigant, and in other instances they didn't. Now, you've listed, and Bowles, I thought, left that open, but if it does leave it open, and I'm looking to those factors, you've mentioned one, that this is a long period of time, 120 days. You're right about that. Is there anything else? I mean, I guess I would take issue with the premise of what the presumption is that Bowles set up. Bowles established a presumption that notice of appeal deadlines in statutes are jurisdictional, unless there is something in the text or in the history, as for example, the Congress did. Breyer, one thing in the text was that there were exceptions written in. That cuts against you. One thing cuts for you. That's the length of time. Is there anything else that cuts for you? I just want to be sure I have all of the factors at your way. I mean, what we're emphasizing is that this is an appeal deadline, and in Bowles, although it is true that there were exceptions there, that was not something that the Court emphasized in its reasoning. The Court's rationale behind Bowles is that there is a presumption that appeal deadlines are jurisdictional. And whatever one thinks of it. Alito, what happens if the notice of decision is mistakenly mailed to the wrong address, comes back undeliverable, and no further notice is sent? Your position is once the 120 days expires, the veteran is out of luck? No, Your Honor, because in that case, the 120 days wouldn't start running, because section 7266a says you have to file within 120 days after the date on which notice of the decision is mailed pursuant to section 7104e. And section 7104e in turn requires that the notice be mailed to the address of record for the claimant, and also incidentally requires that if the claimant has an authorized representative in proceedings before the board, that the notice also be mailed to the representative. Alito, what if it's just lost in the mail? What if it's sent to the right address, but it's lost in the mail or is not received by the veteran? What is the veteran supposed to do? Call every week to see whether a decision has been issued? I think Congress, in writing the statute, assumed that the mail can be relied upon in the ordinary course to be delivered, and so it made provision for the case in which the mail or the mailing is not made. You say that a copy of the notice is also sent to the representative of the American Legion or whoever who has been representing the veteran? Section 7104e2 says that if the claimant has a representative, a copy is mailed. In what percentage of the cases is there a representative? I think it's about 80 percent. I've sent some confusion here, given what you and your friend have said. What do you mean when you say counseled? Do you mean – I mean, if you have somebody from the American Legion that is telling this person, here's what you need to do, does he get a notice, or are you talking about just a situation where somebody comes in and it's, well, I'm this person's lawyer or I'm representing him in some other way? There is a procedure for official accreditation of representatives from organizations like the American Legion, and if that person is registered as the claimant's representative in the proceeding before the board, then they would get a copy of the notice under 7104. And you say that 80 percent of the time there is a registered advocate or counsel? Yes. Now, I think as I was saying But what happened in this case? Was there a registered representative? I'm not sure whether there was. I don't believe so. You made a point earlier that, well, this is the Social Security, there are many resemblances, but one is started by a complaint and the other by notice of appeal. It could be that Congress, having been so kind to veterans, thought why should we burden this pro se or at least lawyerless veteran with writing out a complaint? A notice of appeal is just a simple one-line document. So could that explain why Congress said you begin with a notice of appeal instead of a formal complaint? I think that may well be what Congress had in mind. But nonetheless, the rule established in this Court's cases is that when a notice of appeal deadline, and I think that point just illustrates that this is, in fact, a notice of appeal deadline. Notice of appeal deadlines are different from statute of limitations. And whatever one thinks of the original theoretical underpinnings of that distinction, it's a distinction that's firmly ingrained in the law. And this, I think that's what Congress thought. Scalia, let's assume we come out with a decision against the veteran. Could Congress change the rule retroactively, including for this poor fellow? It could, if it chose to do so, yes. And that wouldn't be contrary to any of our decisions because the government is the defendant and is essentially waiving its sovereign immunity? Would that be the theory? If Congress. I mean, there has been or will have been a final decision in this case, right? Yes. So can Congress say, you know, go back and do it over again and give it to this guy? I believe that, you know, since what's at stake is, ultimately the question would be whether the government issues a monetary award to him. And Congress certainly has the power to simply direct that money be paid to this claimant. So for sure, I think it could direct that his case be reopened. But there's no been no determination on the merits whether this claimant should prevail. No. That hasn't been aired because the Veterans Court said it had no jurisdiction and the Federal Circuit said that's right. So we don't know if this is a good or bad claim. Right. But I don't know. Congress couldn't just award money because there has to be an adjudication. Congress would have the constitutional power to just award money. I understood Justice Scalia's question. Ginsburg. Justice Scalia, I think I asked you, could this be, if Congress decided that this was a harsh result, could it be made retroactive? But for Congress to say, well, just what is it going to rely on to say whether it gives compensation or not? I mean, the government's position was he wasn't entitled to compensation for home care, which is what he was seeking. Right. The question I was trying to address was whether Congress could amend the statute so as to retroactively reopen Petitioner's claim. And my answer was yes, it could do that if it were to choose to do so. Now, the VA, of course, has submitted a proposal to Congress for an extension of the period on showing a good cause up to 120 days. The VA's proposal would not apply retroactively, but Congress in its discretion could choose. Ginsburg. On the length of time, you said 120 days, yes, that's a long time. But isn't it on cert, it's 90 days plus 60, right? So it's even longer. Right. Although if you – I mean, if somebody who misses the 90 days, my understanding of the operation of this Court's Rule 13 is that the clerk will not accept for filing a petition filed on day 91. But the total number of days would exceed 120, assuming that the application is made. Right. The application to extend is timely. Although, of course, filing a cert petition is a much greater undertaking than filing a notice of appeal. You have to do much more than a simple one-line document. Breyer, what is supposed to happen – you know, and I've probably seen this in page 16 of the Federal Circuit Bar's amicus brief. They list about 30 or 40 cases where the veteran perhaps wasn't represented and maybe had some stress syndrome, whatever it is. He just filed the paper in the wrong court and the – or the wrong agency, and that agency didn't get around to returning it to him in time, so he could have met this deadline. What in your opinion is supposed to happen in those circumstances? Just say, too bad, you're out of luck, here we are, you got the wrong address, no recovery. I think it's significant that Congress did address the question of mailing of notices of appeal. In 1994, it amended section 7266 and added a subsection C, which unfortunately is not reproduced in the briefs, but that – the effect of that is to give the benefit of a mailbox rule so that a petition is deemed filed on the day it is mailed, but only, quote, if the notice is properly addressed to the court. So it's significant. Breyer, all these cases, actually, that they've raised in the brief, the veteran does get his appeal. No, in those cases, the notice would not have been properly addressed to the court. It would have been somewhere else. And certainly, one would hope that the VA would have been able to do that. Ideally, would get those notices, figure out what they are and send them to the court. The problem that the VA encounters is that it receives a tremendous volume of mail, which is not generally opened by attorneys, and it's often not clear when it gets something in the mail that it just says, you know, I don't like the decision in my case, whether that's a notice of appeal to the court or a motion for reconsideration or a motion to file a complaint. Breyer, these people in footnote 3, did they get their appeal or didn't they? They did not. They did not? Yes. Okay. There is a problem. Well, yes. And we do not deny, and in fact, it's true by definition, that to say that there is no equitable tolling is to say that there will be cases in which the result is not equitable. But and I think if you were to look at just the cases like the ones Your Honor has identified, some of the others in Petitioner's brief and in the amicus briefs, and if you could identify with no transaction costs what those cases are and were to ask as a policy matter, should there be, should the late filing be excused in those cases, I think just about everyone would say yes. And so if we're in a void and the language doesn't have the exceptions, and I think you can distinguish it from these other cases, and you have older cases that says unless Congress is clear, read it as non-jurisdictional, and nobody could say it was inequitable, or rather, to the contrary, nobody could say it was equitable to follow your position here, why isn't there a simple remedy? We take the opposite position. Well, I think there are two answers to that, and the first is that whatever you think of the rule in Bowles, and we obviously believe that it was correctly decided, but I understand that not everyone takes that view, but the fact that Justice Breyer's view is that it's not inequitable, it's just that it's not equitable  to the parts of it that did, in fact, make clear a special nature of the particular provision at issue in that case. But the question of whether a particular time limit is or is not jurisdictional would seem to be a quintessential example of the sort of issue where it is more important that the law be settled than that it be settled any particular way. And the great virtue of the rule in Bowles is that it provides clear guidance that appeal deadlines are going to be presumed to be jurisdictional, and if Congress doesn't want them to be, it can say so. Sotomayor's That's really the only thing that counsels your result, because in Ree, you took, the government took the position that a statutory provision is non-jurisdictional if it does not speak in jurisdictional terms and doesn't address the power of the court. I understand that was the government's position in Ree. Today you're saying that the only thing that counsels your result is the fact that Congress used the words notice of appeal. Is that correct? Yes. Our position is consistent with what we said in Ree, because Ree, of course, did not involve a time limit. Ree involved the requirement that copyrights be registered before an infringement action is brought. And what the Court said in Ree is that the presence or absence of a jurisdictional label on the statute is not determinative. What matters is whether the type of limitation that the statute imposes is one that's properly ranked as jurisdictional, absent a label. Ginsburg. Is there any statute on the time to appeal? Has any statute been held, quote, jurisdictional when there is no safety valve of any kind written into it? That is, the 2101, 2107, their extensions are possible. Is there a, quote, jurisdictional statute that says 121 days or whatever, and that's it, no extension, no matter what the circumstances are? Yes. The Immigration and Nationality Act, addition in Stone, has no provision for extensions. The Hobbs Act has no provision for extensions. And many of the various agency-specific statutes that I mentioned earlier don't have any provisions for extensions. And although this Court hasn't ruled on them, Petitioner hasn't identified any decision from any court of appeals holding that any of those statutes is not jurisdictional. So there really is, as recognized in Bowles, a uniform rule regarding time limits for the taking of appeals and proceedings like appeals, writs of certiorari and petitions for review. Scalia, what other acts do you think would be swept up into a rule that we adopted here that not all limitations on appeal time are jurisdictional? The Hobbs Act cases, what else? I mean, which ones would be swept up, I suppose, depends on what the Court were to say in distinguishing this case. But there's the Hobbs Act, the other. Well, I'm sure we'd say these are veterans, but I'm sure there are other categories of sympathetic people who might come under the Hobbs Act. There might well be, and I think that's why one of the virtues of the rule in Bowles is that it provides clear guidance to Congress, and in that respect, it's much preferable to a rule that statutes limit. But you haven't answered my question. The Hobbs Act, the Federal Power Act, Communications Act, various EPA orders are reviewed under their specific – each statute has its own review. All these agency matters are matters where there's never been a judicial input. This is review of an agency action. The agency takes an action. No judge has looked at this. And the first time that you look at the rulemaking by the agency under the Hobbs Act, I guess, is when you go file it in the court. So if a ruling against you here were to encompass a ruling under most review of agency action, would that be such a terribly unworkable thing? Well, I suppose that the Court could come up with a rule. Whether that would prove to be workable, I don't know. But I think, I guess what I would say about that is that, given that there is an inherent arbitrariness to any filing deadline, and therefore there is to some degree an inevitable arbitrariness in any system of exceptions to the filing deadline. Why wouldn't it be a bright, clear line if we said court to court, Bowles controls. Agency to court, Bowles does not control. That would be a clear line. It would be clear, but it would be contrary to Stone. It would be contrary to decades of uniform holdings from courts of appeals under all the others. Kennedy, Stone was somewhat mixed, though. It was a motion for reconsideration of the agency, whether or not that told the time to go to the court. Am I correct? That's right, Your Honor. That's sort of a hybrid problem in the context of Justice Ginsburg's dichotomy. But, I mean, you're right that that was the issue in Bowles, but excuse me, in Stone. But the reason that that mattered in Stone was because the Court held that the timely filing of a petition for review in compliance with the statute was a prerequisite to the exercise of jurisdiction by the court of appeals. Breyer, The case that goes the other case that you said decades is what is an example of a case where a person for an incredible, equitable, strong reason, such as the wind, the blue is paper, I don't know, some tremendously equitable, strong reason he wants a review of an agency action. Scalia, The dog ate it, maybe. Breyer, Right, right, the dog ate the court. And the the the the the the there is a case which says there is no extension of a deadline to file for review of an agency action, no matter how equitable your case. Which is our, which is the Supreme Court case that holds that? I'm not familiar with it. I don't know one in the specific context of agency actions, but of course, Breyer, No, I'm only talking about agency actions. Judicial review of agency action. If the time limit is jurisdictional, as the rules, then there is no coercion. Breyer, I know the rules, but I'm just saying you, I understand the rule. I'm saying what's the case? Stone, I understand you can make a case of Stone. Is there another? I don't know of any from this Court, but of course, in the courts of appeals, Petitioner hasn't identified any in which an exception was made. And I would point out that Bowles, in Bowles, the Petitioner had a very sympathetic equitable claim in that he had done what the district court told him to do and filed on the schedule given to him by the district court, and the court nonetheless held that because the time limit was jurisdictional, there was no authority to create an exception to it. If there are no further questions, we ask that the judgment be affirmed. Roberts. Thank you, counsel. Ms. Blatt, you have four minutes remaining. Blatt, thank you, Mr. Chief Justice. Let me just point out on the Hobbs Act, the actual statute says the jurisdiction is invoked by filing a timely petition for review. So there's an express jurisdictional hook. And I think Justice Scalia points out an interesting fact on, I think it's safe to say in 1988 Congress wasn't sitting around thinking is this deadline jurisdictional or subject to equitable tolling. What we had is a period where veterans were not given judicial review. We had World War II and the Vietnam conflict and the Korean conflict, which made it just untenable that veterans were not being treated on par with other claimants seeking disability benefits. And the sponsor of the bill points out, since Social Security disability benefits get judicial review, how can we not treat our nation's veterans the same? Counsel, I want to clear up this represented business. I understood you to say in your opening that represented — most of these people are not represented and to the extent the American Legion participates, they don't get notice of the order that triggers the 120 days. And I understood Mr. Miller to tell us that 80 percent of the people have registered representatives and they do get notice. Blatt. I think you correctly understand that we have a different understanding of reality. So my understanding is that representation is like the — Mr. Henderson's wife at one point tried to become his authorized representative. There is no question he had somebody helping him, a veterans service organization process. This can take up to 4 or 5 years to get notice. My understanding is that this is not the case. Roberts, was that person helping him registered as a representative? No, not that I know of. But this is not. Well, is that the exception then? I mean, Mr. Miller tells us 80 percent of the people do have registered representatives. Right. I understand. And I'm just telling you that my understanding from not only just the amici briefs, that they do not have anything to deal with the court, is that the veterans organizations don't have notice. They are the ones that are filing in this case telling you that this decision will be disastrous for them. But even if they do, they are uncounseled. They are not lawyers. But it won't be disastrous if they can ask to be registered. I agree, but these are the veterans service, like in this case where he lives in North Carolina, there's only like 50 VA regional offices. So his representative may be 100, 200 miles away, and there's not that kind of connection. But if the case comes to us. It doesn't matter how far away they are if he gets notice. They don't – I understand. And I'm just – my understanding is that they either they don't get notice, and even if they have notice, they have – feel no obligation, because they are not in a representative capacity at that point, that they would process his appeal or advise him. Scalia Well, why give them notice? I mean, isn't the very giving of notice an indication that they are expected to do something? And I understand the government representing that there's notice, and I'm telling you that is not my understanding. That when he said authorized representative, I don't think that that meant veterans service organization. I may be wrong. It sounds like we have a different understanding. But if I can get back on to what is really before this Court, is that when there's no indication, all we have is the three words, notice of appeal. When we know that those three words are non-jurisdictional in the criminal context, that there's nothing jurisdictional about the word notice of appeal, it accurately describes that an appeal is going on. It doesn't say anything about whether the deadline is jurisdiction. And the question is, was Congress thinking about the type of people who appeal district courts to courts of appeals? Yes, they were, but they made separate provisions for that. Or were they thinking about the Hobbs Act, which deals with the licensing of nuclear power plants and orders by the FCC, and has an express statement in the text that it's jurisdictional? I doubt that, I think it is safe to say that Congress was not thinking about any of those contexts. They were trying to give veterans their day in court. And this decision would say, no matter what the circumstances are, they are deprived. Now, there was some discussion on the 120-day deadline. I think another thing that is very safe to say is that time is not of the essence in the veteran system. It never has been. 120 days is a blink of an eye. It's true that Social Security are given 60 days and other appellates are given 30. Are you helped or hurt in making that argument when this is not de novo review? I think you're helped. If it's not de novo review, that helps. Yes, there's no prejudice. They don't even – the government doesn't even contest these, because it has to be based on the record before. And all we're talking about is an extra 30 days or 60 days. Thank you, counsel. The case is submitted.